LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
Email: Daniel@lawyersforcleanwatercom
Martin McCarthy (Bar No. 194915)
Email: Martin@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Attorney for Plaintiff
INLAND EMPIRE WATERKEEPER, a program of
ORANGE COUNTY WATERKEEPER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of ORANGE COUNTY WATERKEEPER, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>J LEE'S METALS, INC., dba D&M METALS, and J LEE'S METALS, INC., a California corporation,<br><br>Defendants. | Civil Case No.: EDCV 09-1549 VAP (OPx)<br><br>~~[Proposed]~~<br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

/// 
/// 
/// 
///

**WHEREAS,** Inland Empire Waterkeeper, a program of Orange County Coastkeeper ("Waterkeeper" or "Plaintiff") is a non-profit corporation dedicated to the preservation, protection, and defense of the environment, the wildlife, and the natural resources of Orange County and Inland Empire area receiving waters;

**WHEREAS,** J Lee's Metals, Inc., dba D & M Metals, Inc., and J. Lee's Metals, Inc. (collectively "Defendants"), operate a scrap metals recycling operation located at 840 E. State Street, in Ontario, California 91761 (hereinafter the "D & M Metals Facility," "Site," or "Facility").

**WHEREAS,** Waterkeeper contends that the operations at the D & M Metals Facility result in discharges of pollutants into storm drains, West Cucamonga Creek, Cucamonga Creek, the Santa Ana River, and ultimately the Pacific Ocean (collectively referred to as the "Receiving Waters"); and that discharges from the Facility are regulated by the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act", "CWA" or "Act"), Sections 301 (a) and 402, 33 U.S. C. §§ 1311 (a), 1342;

**WHEREAS,** on June 10, 2009, Waterkeeper served Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit ("60-Day Notice") under Sections 505 (a) and (b) of the CWA, 33 U.S.C. § 1365 (a) and (b).  The 60-Day Notice alleged that the recipients had in the past and continues to violate Sections 301 (a) and 402 of the Act, 33 U.S.C. §§ 1311 (a) and 1342, by discharging pollutants into Receiving Waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS0000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit") and the Act;

**WHEREAS,** on August 13, 2009, Waterkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No. EDCV 09-1549 VAP (OPx)) entitled *Inland Empire Waterkeeper et al. v. J Lee's Metals, Inc. et al. ("Complaint");*

1    **WHEREAS,** on August 24, 2009, Waterkeeper filed a corrected complaint against
2    Defendants with the same caption set forth in the preceding paragraph, which corrected
3    a typographical error in the Complaint ("Corrected Complaint");

4    **WHEREAS,** Defendants deny all allegations of the Complaint and Corrected
5    Complaint and the contentions of Waterkeeper, as set forth in these Recitals and in the
6    60-Day Notice;

7    **WHEREAS,** Waterkeeper and Defendants (collectively referred to herein as the
8    "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to
9    enter into a Consent Decree setting forth terms and conditions appropriate to resolving
10    the allegations set forth in the Complaint without further proceedings and without any
11    admission of liability on the part of the Defendants;

12    **WHEREAS,** Defendants intend to continue their industrial activities at the D & M
13    Metals Facility and will therefore undertake additional measures to control stormwater
14    pollution associated with continuing industrial activities;

15    **WHEREAS,** this Consent Decree shall be submitted to the United States
16    Department of Justice and EPA for the statutory review period pursuant to 33 U.S.C. §
17    1365 (c) and 40 C.F.R. § 135.5;

18    **WHEREAS,** all actions taken by Defendants pursuant to this Consent Decree
19    shall be made in compliance with all applicable Federal and State laws and local rules
20    and regulations.

21    **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**
22    **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
23    **FOLLOWS:**

24    1.    The Court has jurisdiction over the subject matter of this action pursuant to
25    Section 505 (a)(1)(A) of the Act, 33 U.S.C. § 1365 (a)(1)(A);

26    2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)
27    (1) of the Act, 33 U.S.C. § 1365 (c)(1), because the D & M Metals Facility at which the
28    alleged violations took place is located within this District;

3. The Complaint and Corrected Complaint state a claim upon which relief may be granted pursuant to Section 505 of the Act, 33 U.S.C. § 1365.

4. Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. CONSENT DECREE OBJECTIVES

6. It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in Sections 101 *et seq.* of the CWA, 33 U.S.C. §§ 1251 *et seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendants agree, *inter alia,* to comply with the provisions of this Consent Decree and to comply with the requirements of the Industrial Permit and all applicable provisions of the CWA at the D & M Metals Facility. Specifically, Receiving Water Limitation C(2) in the Industrial Permit requires that the D & M Metals Facility "not cause or contribute to the exceedance of an applicable water quality limit." Effluent Limitation B(3) of the Industrial Permit requires that Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"). Defendants are required to develop and implement BMPs necessary to comply with the Industrial Permit's requirement to achieve compliance with Water Quality Standards and BAT/BCT standards. BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the D & M Metals Facility sufficient to achieve the numeric action limits detailed in paragraph 12 below.

## II. COMMITMENTS OF THE PARTIES

### A. Industrial Stormwater Pollution Control Measures

1    7.    Design Storm Event. The Parties agree that the Design Storm Event for the

2    D & M Metals Facility is a 25-year 24-hour return period rain event as defined by the

3    County of San Bernardino Hydrology Manual (August 1986) with an assumed dry

4    antecedent condition and 5.87 total inches of rainfall over a 24-hour period; or any

5    single event exceeding a rainfall intensity of 1.67 inches in one hour.

6    8.    BMP Plan. The BMP Plan attached as Exhibit A hereto is designed to

7    capture and infiltrate stormwater generated during rain events up to and including the

8    Design Storm Event (the "Infiltration Unit") within the D & M Metals Facility

9    Containment Zone (set forth on and attached hereto as Exhibit B). The BMPs set forth

10   in the plan shall be implemented to ensure that no stormwater discharges occur from the

11   D & M Metals Facility Containment Zone during rain events up to and including the

12   Design Storm Event, and so that no pollutants from the D & M Metals Facility's

13   stormwater infiltration system cause degradation of groundwater. As set forth on the

14   attached BMP Plan (Exhibit A), the location and design of the Infiltration Unit shall be

15   accessible for future inspection and maintenance. Defendants shall also ensure that the

16   soils and groundwater conditions at the installation site of the Infiltration Unit are at

17   least as conducive to effective infiltration as those on the property owned and/or

18   operated by Defendants directly to the east of the D & M Metals Facility operations

19   yard, shown on Exhibit B as area "YY". If the proposed site of the Infiltration Unit

20   does not provide equally effective infiltration capacity, Defendants and Waterkeeper

21   shall meet and confer to determine an alternate site for the Infiltration Unit. Defendants

22   shall continue to properly implement the BMP Plan during the life of this Consent

23   Decree.

24   9.    Stormwater discharges from the D & M Metals Facility that do occur shall

25   be monitored as described in Section B below of this Consent Decree during the life of

26   this Consent Decree, and discharges from the D & M Metals Facility Containment Zone

27   during storm events less than the Design Storm Event shall constitute a breach of this

28   Consent Decree.

10.    Non-stormwater discharges from the D & M Metals Facility Containment Zone during the life of this Consent Decree not authorized by the Industrial Permit shall be considered breaches of this Consent Decree.

**B.    Stormwater Sampling and Numeric Action Levels**

11.    Sampling. During the life of this Consent Decree, Defendants shall sample every offsite discharge from the D & M Metals Facility Containment Zone and shall provide the results of such sampling to Waterkeeper in accordance with the provisions set forth below.  Samples shall be evaluated consistent with the requirements of the Industrial Permit and shall have detection limits sufficiently sensitive to evaluate compliance with the Numeric Action Levels set forth in paragraph 12.

12.    Numeric Action Levels. During the life of this Consent Decree, contaminants in discharges occurring during storm events smaller than the Design Storm Event from the D & M Metals Facility Containment Zone shall not exceed the Numeric Action Levels set forth in Table 1, consistent with paragraphs 13 and 14 below.

**Table 1. Numeric Action Levels for D & M Facility Discharges**

| Contaminant | Numeric Action Level |
|---|---|
| Total suspended solids | 100 mg/L |
| Copper | 0.0636 mg/L |
| Lead | 0.0816 mg/L |
| Zinc | 0.117 mg/ |
| Oil and grease | 15 mg/L |
| Aluminum | 0.750 mg/L |
| Arsenic | 0.16854 mg/L |
| Cadmium | 0.0159 mg/L |
| Iron | 1.0 mg/L |
| Mercury | 0.0024 mg/L |
| Nickel | 1.417 mg/L |
| Silver | 0.0318 mg/L |
| Chemical oxygen demand | 120 mg/L |
| pH | 6.0-9.0 |

13.    Comparing Analytical Monitoring Results to Numeric Action Levels: Following each sampling event, discharge data for storm events smaller than the Design Storm Event will be compared to the Numeric Action Levels in paragraph 12 above. In the event that one or more of the pollutant concentrations exceed the Numeric Action Levels, Defendants shall prepare an Action Plan as described below in paragraph 15, unless Defendants can demonstrate that contaminant mass for that parameter has been reduced through onsite stormwater infiltration and/or diversion of runoff from existing or newly installed roofs or canopies to avoid contact with industrial contaminants consistent with the requirements of paragraph 14 below.

14.    Comparing Analytical Monitoring Results to Numeric Action Levels Considering Mass Reduction Through Infiltration and/or Diversion: In the event that onsite infiltration and/or diversion are implemented to reduce the mass of contaminants discharged from the D & M Metals Facility, the following method will be used to assess compliance with the Numeric Action Levels described in paragraph 12 for any discharge point where stormwater discharges occur during storm events smaller than the Design Storm Event.

a.    Based on existing site conditions (100 percent impervious surfaces and no stormwater infiltration or diversion) and the amount of rainfall that falls on the D & M Metals Facility during each of the monitored storm events described in paragraphs 11 and 12, the volume of water that would have discharged from the D & M Metals Facility prior to installation of the infiltration and/or diversion measures shall be calculated.

b.    Using the Numeric Action Levels described in paragraph 12, the mass of "allowable" pollutants will be calculated (volume of water assuming no infiltration/diversion multiplied by the Numeric Action Levels) for each constituent listed in paragraph 12.

1          c.     The actual contaminant mass discharged for each of the pollutants

2  listed in paragraph 12 will be calculated (volume of water actually discharged

3  multiplied by the analytical results for storm events where discharges occur);

4          d.     For each of the monitored storm events, the calculated mass of actual

5  contaminants discharged under subparagraph (c) above will be compared to the mass of

6  allowable contaminants calculated under subparagraph b above. If the mass of actual

7  contaminants is above the allowable mass of contaminants, an Action Plan shall be

8  prepared as described in paragraph 15 below.

9      15.    Numeric Action Level Action Plan. In the event that one or more of the

10  Numeric Action Levels in Table 1 are found to be exceeded using the procedures set

11  forth in paragraphs 13 and 14 above during storms of intensity less than the Design

12  Storm, Defendants shall produce an Action Plan within 45 days of receipt of laboratory

13  reports demonstrating the exceedance. The Action Plan shall include additional BMPs

14  designed to achieve compliance with the Numeric Action Levels set forth in Table 1 and

15  include deadlines for implementation of the proposed BMPs that will be as soon as

16  practicable, but in no event later than the beginning of the next wet season as defined by

17  the Industrial Permit. Defendants agree to submit the Action Plan to Waterkeeper for

18  review and comment as soon as it is completed but in any event no later than 45 days

19  following receipt of laboratory reports for the data demonstrating the exceedance.

20  Waterkeeper shall provide comments, if any, to the Defendants within 30 days of

21  receipt. Defendants shall incorporate Waterkeeper's comments into the Action Plan and

22  implement the revisions within 14 days of receiving Waterkeeper's comments. If any of

23  Waterkeeper's comments are not utilized, Defendants shall justify in writing why any

24  comment is not being incorporated within 14 days of receiving comments. Any disputes

25  as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution

26  provisions of this Consent Decree, set out at paragraphs 28 through 31 below.

27  Defendants shall notify Waterkeeper in writing when the Action Plan has been

28  implemented.

C.   **Vadose Zone Sampling**

16.   Sampling. During the first two years of the Consent Decree, Defendants shall collect samples of infiltrating stormwater in areas where significant stormwater infiltration occurs. During the first and second wet seasons, vadose zone samples will be collected after at least three storm events from a minimum of one lysimeter or similar device. At least two lysimeters shall be installed in mutually agreed locations on the edge of the infiltration field. The lysimeter samples will be analyzed for the metals (both total and dissolved) presented in Table 1.

17.   Vadose Zone Results Evaluation. The vadose zone sampling results from the first wet season under this Consent Decree (October 1, 2010-May 31, 2011) will be used to prepare a Stormwater Infiltration Evaluation Report, which will evaluate the potential for infiltrating stormwater to degrade groundwater below the D & M Metals Facility. The evaluation of potential impacts to groundwater will include a comparison of the vadose zone sample results to Maximum Contaminant Levels (MCLs) established by US EPA for the metals in Table 1 in groundwater. If any MCL is exceeded, Defendants shall inform Waterkeeper within 48 hours of receiving the result and shall prepare a plan to perform additional assessments to evaluate the potential for MCL exceedances in groundwater itself (Contingency Plan) to be ready and available to implement if the wet season mean of sampling results from the lysimeter exceeds the MCL for any metal listed on Table 1. The Contingency Plan, if necessary, will be included as part of the Stormwater Infiltration Evaluation Report and may include literature research regarding background concentrations of metals in soil and groundwater; collection and analysis of background soil, pore water, and groundwater samples; additional monitoring of the existing lysimeter; installation and monitoring of deeper lysimeters; installation and monitoring of upgradient/downgradient groundwater wells; vadose zone modeling; additional pretreatment BMPs, or other methods as appropriate to assess or to mitigate the potential for exceedances of MCLs in groundwater. Defendants shall prepare for the

1  Stormwater Infiltration Evaluation Report, including potential vadose zone modeling,
2  by collecting appropriate soils and hydrogeologic data when the lysimeters are installed.
3       18.    Defendants agree to submit the Contingency Plan, if required under
4  paragraph 17, to Waterkeeper as part of the Stormwater Infiltration Evaluation Report
5  for Waterkeeper's review and comment no later than 60 days following the end of the
6  2010/2011 wet season. In addition to evaluating the potential for infiltrating stormwater
7  to degrade groundwater, the report will provide recommendations for additional
8  pretreatment BMPs as appropriate to protect groundwater. The report will also establish
9  "trigger levels" for infiltrating stormwater collected from the lysimeters, which if
10  exceeded, will require Defendants to prepare Stormwater Infiltration Evaluation Reports
11  at the completion of the second wet season under this Consent Decree.  Waterkeeper
12  shall provide comments, if any, to Defendants within 30 days of receipt. Defendants
13  shall incorporate Waterkeeper's comments into the contingency plan, if any, and into the
14  Stormwater Infiltration Evaluation Report, and re-issue this Report to Waterkeeper
15  within 14 days of receiving Waterkeeper's comments. If any of Waterkeeper's comments
16  are not utilized, Defendants shall justify in writing why any comment is not being
17  incorporated within 14 days of receiving comments. Any disputes as to the adequacy of
18  the contingency plan, if any, and the Stormwater Infiltration Evaluation Report, shall be
19  resolved pursuant to the dispute resolution provisions of this Consent Decree, set out at
20  paragraphs 28 through 31 below.  If the wet season mean of vadose sampling results
21  exceeds the MCL or background if background exceeds the MCL for any metal,
22  Defendants shall implement the contingency plan immediately upon its finalization.

23       **D.    Monitoring and Reporting**

24       19.    Site Inspections. Waterkeeper's Water Quality Engineer, accompanied by
25  Waterkeeper's attorney or other representative approved by Defendants, may conduct up
26  to one Site Inspection per year at the D & M Metals Facility during the life of this
27  Consent Decree. The Site Inspections shall occur during normal business hours and
28  Waterkeeper shall provide Defendants with 48 hours notice prior to each inspection.

1   During the Site Inspections, Waterkeeper and/or its representatives shall be allowed
2   access to the D & M Metals Facility's SWPPP and monitoring records and to all
3   monitoring reports and data for the Facility. During the Site Inspections, Waterkeeper
4   and/or its representatives may collect samples of stormwater discharges from the D & M
5   Metals Facility, if any. A certified California laboratory shall analyze stormwater
6   samples collected by Waterkeeper and copies shall be provided to Defendants within ten
7   (10) business days of receipt. At the request of Defendants, the samples shall be split
8   and one half provided to Defendants to allow Defendants to have their own certified
9   California laboratory analyze stormwater samples collected by Waterkeeper, in which
10   case Defendants shall provide their laboratory results to Waterkeeper within ten (10)
11   business days of receipt. Waterkeeper shall make all reasonable efforts to ensure that its
12   inspections are scheduled in such a manner as to allow Defendants' compliance officer
13   to be present at all inspections.

14      20.   Compliance Monitoring and Oversight. Defendants agree to help defray
15   Waterkeeper's monitoring costs by reimbursing Waterkeeper Two Thousand Dollars
16   ($2,000.00) within 60-days of the Effective Date of this Consent Decree.  Defendants
17   agree to make compliance monitoring and oversight funds payable to "Lawyers for
18   Clean Water Attorney Client Trust Account" and deliver them by certified mail or
19   overnight delivery to Lawyers for Clean Water, Inc., 1004 O'Reilly Avenue, San
20   Francisco, California 94129, attention Layne Friedrich. Waterkeeper shall provide
21   copies of any invoicing for Site Inspections and compliance oversight within 30-days of
22   receiving a written request by Defendants. Any compliance monitoring money
23   remaining when this Consent Decree terminates shall be refunded to Defendants.

24      21.   Reporting. During the life of this Consent Decree, each January 15 and July
25   15, Defendants shall provide Waterkeeper with a copy of all stormwater-related
26   compliance and monitoring data, including inspection reports, related to the D & M
27   Metals Facility for the wet season. The reports shall be submitted every January 15 for
28   the period from October 1 to December 31, and on July 15 for the period from January 1

1  through April 30th. During the life of this Consent Decree, Defendants shall provide
2  Waterkeeper with all laboratory analyses related to the D & M Metals Facility within 7
3  business days of Defendants' receipt of such information.

4      22.    Document Provision. During the life of this Consent Decree, Defendants
5  shall copy Waterkeeper on all documents related to water quality at the D & M Metals
6  Facility that are submitted to the Regional Board, the State Board, and/or any State or
7  local agency or municipality. Such reports and documents shall be provided to
8  Waterkeeper concurrently as they are sent to the agencies and/or municipalities.

9      E.     ENVIRONMENTAL PROJECTS AND FEES

10     23.    Environmental Mitigation Project. Defendants agree to pay Four Thousand
11 Dollars ($4,000.00) to the Public Interest Green Fund at the Orange County Community
12 Foundation, 30 Corporate Park, Suite 410 Irvine, California 92606,  www.oc-cf.org.
13 The Public Interest Green Fund is a nonprofit organization that uses its funds to support
14 environmental advocacy by area law students, either via stipends or scholarships. This
15 mitigation payment shall be used to support student advocacy in projects that reduce or
16 mitigate the impacts of storm water pollution in Orange County and the Inland Empire.
17 Defendants shall make the mitigation payment within 60-days of the Effective Date of
18 this Consent Decree and mail the payment via certified mail or overnight delivery to the
19 Public Interest Green Fund. Defendants shall provide Waterkeeper with a copy of such
20 payment.

21     24.    Waterkeeper's Fees and Costs. Defendants agree to reimburse Waterkeeper
22 for Waterkeeper's investigation fees and costs, expert fees and costs, reasonable
23 attorneys' fees, and other costs incurred as a result of investigating and preparing the
24 lawsuit, and negotiating a resolution of this matter, totaling Fifty-six Thousand Dollars
25 ($56,000.00). Such payment shall be made within sixty (60) days of the Effective Date,
26 payable to "Lawyers for Clean Water Attorney Client Trust Account" and delivered by
27 certified mail or overnight delivery to: Lawyers for Clean Water, Inc., 1004 O'Reilly
28 Avenue, San Francisco, California 94129, attention Layne Friedrich.

**F.    COMMITMENTS OF PLAINTIFF**

25.    Within 10-days of the execution of this Consent Decree by the Parties, Waterkeeper shall file a Notice of Tentative Settlement and Notice of 45-Day Review in the United States District Court for the Central District of California ("District Court").

26.    Review by Federal Agencies.  Plaintiff shall submit this Consent Decree to the United States Environmental Protection Agency ("EPA") and the United States Department of Justice ("DOJ") within three days of the execution of this Consent Decree for review consistent with 40 C.F.R. § 135.5.  In the event that EPA or DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

27.    Plaintiff shall lodge this Consent Decree with the District Court within forty-eight (48) days after receipt by EPA and DOJ of the Consent Decree for the review set forth in paragraph 26 above.  Waterkeeper is responsible for notifying Defendants of the District Court's entry of the Order dismissing these claims with prejudice.  Such notification can be satisfied by the Central District of California's Case Management/Electronic Case Filing ("CM/ECF") notification to the Parties that the Order was executed and entered by the District Court.

**G.    DISPUTE RESOLUTION**

28.    This Court shall retain jurisdiction over this matter for a period of five years from the date of entry of the Consent Decree for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

29.    Meet and Confer.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's intention to resolve the dispute under this Section. The Parties shall then meet and confer in good faith (either telephonically or in person)

1   in an attempt to resolve the dispute informally over a period of 14-calendar days from
2   the date of the notice.

3       30.   If the Parties cannot resolve a dispute by the end of meet and confer
4   informal negotiations, the party invoking the dispute resolution provision shall provide
5   notice to the other party that it intends to invoke formal dispute resolution by filing a
6   motion before the United States District Court for the Central District of California.

7       31.   If Waterkeeper initiates a motion or proceeding before the Court relating to
8   enforcement of the terms and conditions of this Consent Decree, and is determined by
9   the Court to be the prevailing party, Waterkeeper shall be entitled to recover fees
10   incurred to enforce the terms of this Consent Decree consistent with the provisions of
11   Sections 505 and 309 of the CWA, 33 U.S.C. §1365 and § 1319.

12   **III.**   **RETENTION OF JURISDICTION AND TERMINATION**

13       32.   During the life of this Consent Decree, the Court shall retain jurisdiction
14   over this matter for purposes of interpreting, modifying or enforcing the terms of this
15   Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion
16   to enforce this Consent Decree filed within 60-days after completion of the obligations
17   set forth in the Consent Decree. This Consent Decree and the Court's jurisdiction shall
18   terminate five years from the Effective Date.

19   **IV.**   **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

20       33.   In consideration of the above, upon the Effective Date of this Consent
21   Decree, the Parties hereby fully release, except for claims for the Defendants' failure to
22   comply with this Consent Decree and as expressly provided below, each other and their
23   respective successors, assigns, officers, agents, employees, and all persons, firms and
24   corporations having an interest in them, from any and all alleged CWA violations
25   claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

26       34.   Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to
27   address or take any position that it deems necessary or appropriate in any formal or
28   informal proceeding before the Regional Board, EPA, or any other judicial or

administrative body on any other matter relating to stormwater discharges from the D & M Metals Facility occurring or arising after the Effective Date of the Consent Decree but specifically excluding the discharges and all other matters addressed by this Consent Decree.

## V.    MISCELLANEOUS PROVISIONS

35.    No Admission of Liability.  Neither this Consent Decree, the implementation of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

36.    Force Majeure.  Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency.  Force Majeure shall not include normal inclement weather, economic hardship or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance, shall have the burden of establishing that it could not reasonably have been expected to avoid and which by exercise of due diligence has been unable to overcome the failure of performance. Defendants shall exercise due diligence to resolve and remove any force majeure event.

37.    Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Permit, the Clean Water Act, or specifically herein.

38.    Choice of Law.  The laws of the United States shall govern this Consent Decree.

1      39.   Severability.  In the event that any provision, paragraph, section, or sentence

2    of this Consent Decree is held by a court to be unenforceable, the validity of the

3    enforceable provisions shall not be adversely affected.

4      40.   Correspondence.  All notices required herein or any other correspondence

5    pertaining to this Consent Decree shall be sent by overnight mail or courier as follows:

6      If to Plaintiff:

7    Daniel Cooper
     Martin McCarthy
8    Lawyers for Clean Water, Inc.
9    1004 A O'Reilly Ave.
     San Francisco, CA 94129
10

11   With copies to:
12
     Garry Brown
13   Orange County Waterkeeper
14   3151 Airway Ave, Suite F-110
     Costa Mesa, CA 92626
15

16     If to Defendants:
17

18   Wayne S. Rosenbaum
     Foley & Lardner LLP
19   402 W. Broadway, Suite 2100
20   San Diego, CA 92101

21   With copies to:
22
     Albert Lee
23   D & M Metals/ J. Lee's Metals, Inc.
24   840 E. State Street
     Ontario, CA 91761
25

26     Notifications of communications shall be deemed submitted the next business day

27   after having been deposited with an overnight mail/delivery service, or within three days

28   after mailing via regular or certified mail.  Any change of address or addresses shall be

1  communicated in the manner described above for giving notices. In addition, the Parties
2  may agree to transmit documents electronically or by facsimile.

3  41.  Effect of Consent Decree. Except as provided herein, Plaintiff does not, by
4  its consent to this Consent Decree, warrant or aver in any manner that Defendants'
5  compliance with this Consent Decree will constitute or result in compliance with any
6  Federal or State law or regulation. Nothing in this Consent Decree shall be construed to
7  affect or limit in any way the obligation of the Defendants to comply with all Federal,
8  State, and local laws and regulations governing any activity required by this Consent
9  Decree.

10  42.  Counterparts. This Consent Decree may be executed in any number of
11  counterparts, all of which together shall constitute one original document. Telecopy,
12  email of a .pdf signature and/or facsimile copies of original signature shall be deemed to
13  be originally executed counterparts of this Consent Decree.

14  43.  Modification of the Consent Decree. This Consent Decree, and any
15  provisions herein, may not be changed, waived, discharged, or terminated unless by a
16  written instrument, signed by the Parties.

17  44.  Full Settlement. This Consent Decree constitutes a full and final settlement
18  of this matter.

19  45.  Integration Clause. This is an integrated Consent Decree. This Consent
20  Decree is intended to be a full and complete statement of the terms of the agreement
21  between the Parties and expressly supersedes any and all prior oral or written
22  agreements covenants, representations, and warranties (express or implied) concerning
23  the subject matter of this Consent Decree.

24  46.  Authority. The undersigned representatives for Plaintiff and Defendants
25  each certify that he/she is fully authorized by the party whom he/she represents to enter
26  into the terms and conditions of this Consent Decree.

27  47.  The provisions of this Consent Decree apply to and bind the Parties,
28  including any successors or assigns, upon execution of the Consent Decree. The Parties

1  certify that their undersigned representatives are fully authorized to enter into this

2  Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to

3  its terms.

4      48.    The Parties agree to be bound by this Consent Decree and not to contest its

5  validity in any subsequent proceeding to implement or enforce its terms.  By entering

6  into this Consent Decree, the Defendants do not admit liability for any purpose as to any

7  allegation or matter arising out of this Action.

8      49.    The term "Effective Date," as used in this Consent Decree, shall mean the

9  tenth (10th) calendar day after the date that Waterkeeper lodges the Consent Decree with

10  the District Court for approval, or the date the District Court signs the Consent Decree,

11  whichever date occurs earlier.

12      The undersigned representatives for Waterkeeper and Defendants each certify that

13  he/she is fully authorized by the party whom he/she represents to enter into the terms

14  and conditions of this Consent Decree and that this Consent Decree binds that party.

15      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as

16  of the date first set forth below.

17

18                             LAWYERS FOR CLEAN WATER, INC.

19

20

21  Dated:     7 April 2010        By: _____

22                               Martin McCarthy

23                               Daniel Cooper

                             Lawyers for Clean Water, Inc.

24                               Attorneys for Plaintiff

25                               Inland Empire Waterkeeper/
                             Orange County Coastkeeper

26

27

28

---

(Proposed) Consent Decree         18         Case No. EDCV 09-1549 VAP (OPx)

INLAND EMPIRE WATERKEEPER/
ORANGE COUNTY COASTKEEPER

Dated: _5_ April 2010          By: _____
                              Garry Brown
                              Inland Empire Waterkeeper/
                              Orange County Coastkeeper


FOLEY & LARDNER, LLP

Dated: _____ April 2010        By: _____
                              S. Wayne Rosenbaum
                              Attorney for Defendants
                              J Lee's Metals, Inc., dba
                              D & Metals, Inc., and
                              J Lee's Metals, Inc.


J. LEE'S METALS, INC., dba
D & M METALS, and J. LEE'S
METALS, INC.

Dated: _1_ April 2010          By: _____
                              Joong T. Lee

**IT IS SO ORDERED:**

Date: _June 11 2010_

_____
Honorable Virginia A. Phillips
UNITED STATES DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA

# EXHIBIT  A

To Consent Decree

*Inland Empire Waterkeeper et. al. v. J Lee's Metals, Inc., et al.*, EDCV 09-1549 VAP (OPx)

Case 5:09-cv-01549-VAP-OP   Document 28   Filed 06/17/10   Page 21 of 24   Page ID #:283



# D & M METALS

## 840 E. STATE STREET
## ONTARIO, CA. 91761

D & M METALS
540 E. STATE STREET
ONTARIO, CA 91761

PES ENGINEERING
9560 TELSTAR AVE #224
EL MONTE, CA 91731

Exhibit A

FIRST ROW OF STORMCHAMBER® SYSTEM

STORMCHAMBER® EXAMPLE CONFIGURATION

SEDIMENT TRAP AND
STORM CHAMBERS DETAILS

RECOMMENDED INSTALLATION OF STORMCHAMBER®

SECTION

INSTALLING THE SEDIMENT TRAPS™

STORMCHAMBER® INSTALLATION

PARTIAL INSTALLATION PROCEDURE

# EXHIBIT  B

To Consent Decree

*Inland Empire Waterkeeper et al. v. J Lee's Metals, Inc., et al.*, EDCV 09-1549 VAP (OPx)

Exhibit B